Case No. 15-1450 Seminole Electric Cooperative, Inc. Petitioner v. Federal Energy Regulatory Commission Mr. Janenky for the petitioner, Mr. Fulton for the respondent, Mr. Shepard for the intervener Good morning, your honors. My name is Jeff Janenky and I represent the petitioner Seminole Electric Cooperative, and with me at counsel's table is Kimberley Frank. If I may, I'd like to reserve three minutes for a rebuttal. This case presents two issues. First, whether FERC-regulated utilities can impose different charges for the same service despite having precisely the same tariff language. And second, whether a contract that limits challenges to the correctness of bills imposes a time limit on refunds arising from tariff violations. We submit that the answer to both questions is no. As to the first issue, one thing must be made clear from the outset. This case is about FERC's decision to allow the utilities it regulates to choose the interpretation that they desire without so much as telling anyone what interpretation they're going to apply. This is arbitrary and capricious for multiple reasons, as I will discuss. First, by way of background, Schedule IV, the energy imbalance provision, was added to the Florida Power and Light Tariff pursuant to Order 890. In mandating that provision for all transmission providers, FERC explained that its goals were to 1. Reduce the potential for undue discrimination, 2. Increase transparency, 3. Reduce confusion resulting from the prior lack of consistency, and 4. Resolve ambiguities. And aren't all of those goals met with either interpretation, either apportioned or non-apportionment? Well, in fact, FERC expressly said that Order 890 standardized the charges for energy imbalance service, not that it just increased consistency as to the general approach to calculating them, but it standardized the charges themselves. And so, as we detail in our brief, why we've detailed in our brief Standardizing the charges, does that answer the apportionment and non-apportionment question? Well I mean, standardized in terms of the range and the triggers and things of that nature, but does that really reach the apportionment and non-apportionment issue? Well, we've detailed in our brief why we believe Schedule 4 requires apportionment, particularly in light of FERC's intent to model the provision on the Bonneville Power... Yeah, but that cuts both ways, because even though they said it was going to be similar to Bonneville, they actually took the key language out. So, doesn't that actually cut against you? Well, if FERC's intent in using similar as opposed to identical language had been to allow contradictory approaches to pricing, then it should have said so. Instead, what it said in Order 890 is that it said that Order 890 standardized the charges. Again, not just the method of determining them, not just the language that has to be set forth in the tariff, but standardizes the actual charges. And again, to the extent there were any doubt about FERC's intent after Order 890, that doubt was resolved shortly after, during the same year, in the Louisville Gas and Electric case, where FERC expressly ruled that apportionment is consistent with Pro Forma Schedule 4. But did they say that non-apportionment is inconsistent with it? They did not. Yeah, sorry. But again, they also said that the charges were standardized. When you put one together, standardized charges to us means a single approach to calculating the charges. And they also said that... They never said that. That's true. They did say they standardized the charges, though. What's the explanation for why they took out the language? You know, I can't get into FERC's head in terms of what it was thinking. One possible... I mean, I can't really speculate. One possibility is that when Bonneville Power Administration participated in the rulemaking proceeding, they described their own provision without using apportion language. And it's possible that FERC used that sort of paraphrasing in crafting its own provision. Because there were other reasons for distinctions. For example, the Schedule 4 does not cover heavy and light load hours, as FTL has pointed out in his brief. However, I think it's... Again, this is just speculation. It may be that they just took Bonneville's summary description of what was going on and used that to craft their own provision. You see, you're understanding the point that it's not clear. And if it's not clear, if it's ambiguity, we'd have to defer to FERC. But not when FERC said in the rulemaking proceeding that the charges have been standardized. Yeah, I'd have to think more about what that means, standardized charges, whether that gets to apportionment and non-apportionment. We'll hear what your opponents have to say. What's your strongest argument for the language of standardized charges addresses the question of apportionment or non-apportionment? The strongest argument is that FERC ruled that the language of Schedule 4... I'm sorry, that apportionment is consistent with Schedule 4. And it also said that there is a standardized charge. We don't see how that leaves room for two different interpretations. Frankly, we're not aware of any other situation in which FERC has said that individual utilities get to decide how to interpret the language of a standardized tariff provision. I mean, that as a general matter defeats the purpose of a standardized tariff provision. This really makes the situation much worse in a way. Because before, if you wanted to impose different charges, you had to file your proposal to FERC and justify it and allow others to object. Now, as I said, you just get to decide, and you don't even have to tell anyone what you're going to do. As I said, we're not aware of any other situation in which this has occurred. Even if you set aside the standardized charges language of the Order 890 series. So, in our view, this is not a case in which FERC looked at a provision, determined that it was ambiguous, then exercised its discretion to interpret it one way or another. Rather, it's about FERC's decision to allow the utilities that it regulates to choose their own interpretation, which is in direct contravention of the standardization mandate. So, can we talk about the refund? Yes. Provision for a second. Okay, so, yeah, turning to the refund issue. Section 12 of the Transmission Service Agreement between Seminole and Florida Power & Light states that challenges to the correctness of bills, correctness of any bill must be made within 24 months after the bill was rendered. The intent of this language is to impose a limit on claims arising from billing mistakes and other clerical errors. How do we know that? It says, the customer may, in good faith, challenge the correctness of any bill rendered under the tariff no later than 24 months after the date the bill was rendered. When we say somebody can challenge the correctness of our decision in this case, we don't mean whether we cited correctly under the blue book. We mean the merits. Why isn't that at least a plausible or reasonable, not the only but still reasonable reading of the word correctness? Sure. Well, FERC has, on multiple occasions, recognized the distinction between contract provisions that broadly limit claims, that limit all claims, and those that address billing accuracy only, as we've cited the Power X case, for example. Are there any where the word correctness was used? No, but accuracy and correctness mean the same thing. Well, it's not, I mean, it's possible that they mean the same thing, but I know you have a definition from a district court saying it means the same thing, but it doesn't mean it's the only possible meaning. And they use the word accuracy and arithmetical accuracy later to suggest that this may be something different that is in the same provision. Well, I would submit that if FERC's intent had been to broadly, I'm sorry, if the intent of the parties had been to broadly limit all claims, then they could have used very simple language setting that forth as opposed to using language that says we're dealing with the correctness of bills that are rendered under and in accordance with a tariff. Let me just pull up an example. It doesn't say, again, that first sentence doesn't say and in accordance. It says under. Correct. There's another sentence that uses in accordance, which is used with respect to the arithmetical accuracy provision, which might be another indication that the first one means correctness of any bill rendered under the tariff. And, you know, you can challenge both. And then there's a limitation on what happens if you're only challenging arithmetical accuracy. But why doesn't the first sentence just mean, I don't know what it's, what at least reasonably mean that it means you have to challenge the correctness of the decision under the tariff, just like you are, you know, you would challenge the correctness of our decisions under the Constitution or under the APA. If you don't like what we do when you go to the Supreme Court, you would be challenging, you would say our decision is not correct under the APA or not correct under FERC's organic extension. Well, first of all, are you asking if we're reading that first sentence outside the context of the rest of the provision? No, I want to go, obviously I want to hear it piece by piece. One by one. Yes, but at least with respect to the first sentence, is it not a plausible reading that it means any bill, regardless of what the kind of attack is? I don't believe it's plausible in light of the distinctions that FERC has made in the past between provisions that broadly limit claims and those that use more precise wording. I was going to point to another provision that, bear with me for a moment here. This was actually one of the provisions that FERC cited to you as an order supporting what is done here. It's the PGM order. And if you look at that provision, for example, it says, no claim seeking adjustment in the billing for any service, transaction, or charge under the tariff may be asserted with respect to a month if more than two years has elapsed since the first date upon which that month occurred. And then there's a corollary to that, to saying that the transmission provider can't make adjustments unless all those, except under those conditions. But it's very broad, very straightforward. It doesn't have anything about correctness. There's nothing about bills rendered in accordance with the tariff. It's the fact that it's been shown that you can make these... I have to say there's lots of things in these tariffs that people can make a lot more clear. I agree. I definitely agree with that. But I believe that given the precise wording that was chosen for this particular provision, that it's clear that the intent is not to simply broadly limit all claims. Otherwise, you basically render all this other wording meaningless. So what's the other wording in the 12.0 when you said there was additional context, which I asked you to hold off for? Sure. What's the other wording that you think? Okay, let me just pull up the provision here. Okay, so... It's on page 42. Okay, so the first sentence, as you said, challenged the correctness of any bill. And we said that the use of correctness there is very analogous to the use of the word accuracy, which FERC has held does not go to tariff violations. It goes to more clerical issues. The second... Okay, just billing challenge will be in writing. Third is... And the third sentence is the one that FPL and FERC focus on, which standing alone would seem very broad. Which one do you focus on as far as... Okay, so... What helps you? Okay, so we focus on the first sentence and the use of the word correctness. And then we focus on the fourth sentence, which specifies what the challenge of a bill rendered under in accordance with the tariff is limited to. And it goes to... It then lists the various items that are challengeable, that are rendered under in accordance, that are then limited by this provision. It distinguishes arithmetical accuracy and the use of correct grade there. Yes. How does that help you? Because in this context, where you have a bill that's rendered under and in accordance with the tariff, if you're using the term correct rate in that same sentence, it can only be construed as referring to numerical inputs and items of that nature. There's no way you can say it broadly limits all... every claim in which there's a tariff violation, because that would render meaningless the first sentence, which says bills rendered under and in accordance with the tariff. That suggests that you think that this... would preclude any other kind of challenge. Why isn't at least a plausible reading that the first sentence means any claim you make has to be within 24 months, and this one being if your claim... that the only kind of claim you can make is one... for arithmetical accuracy if your argument is that it is rendered under and in accordance with the tariff. Your argument here is that it's not rendered in accordance with the tariff. Correct. Yeah. So this is only about what happens if... if it's rendered in accordance with the tariff. In that case, you can only make claims about arithmetical accuracy. But if your argument is that it's not rendered in accordance with the tariff, this part doesn't limit you. But all claims are limited by the 24-month claim, the first sentence. In context, this can only be read, we view, that the words correctness and rendered under and in accordance apply to the entire provision that you can't just take pieces out of context. But it doesn't say that in the first sentence. Chief Judge Garland said it says just under. Correct. Correctness under, it sounds like, covers a lot of turf. Are we right that all you need is a read... all that's required to uphold is that their reading be reasonable, right? That's correct. On this one. Okay. You want to hold your remaining 12 seconds? Okay. Yes. Thank you. Thank you. Thank you, Your Honors. Ross Fulton for the Commission. Your Honors, for Seminole to succeed on its complaint here as to the apportionment issue, it has to show that the Commission was wrong and that Schedule 4 is, in fact, clear and unambiguous. How was Seminole supposed to know whether it was apportionment or not? I... Your Honor, I think that there was... I think that this was an issue where the Commission simply did not address apportionment in Order 890. The Commission said, if you look at the order and the focus on the principles that was referred to earlier, the focus was on creating this tier structure to create an escalating charges and create incentives. So you're saying FERC is supporting a reading that it's a surprise that Florida... that Seminole's not going to know until they get the bill? The Commission... This is pretty significant. This is material, isn't it? Whether it's going to be apportionment or non-apportionment. It is, Your Honor. And they just have to wait to see how it's going to be interpreted by Florida Power. Because Seminole doesn't know. It's a surprise. Well, there was a couple ways that this could have been addressed as this was, in fact, a matter of first impression for the Commission. Seminole could have earlier brought a declaratory action to the Commission seeking some type of determination from FERC as to how they were going to interpret this provision earlier. Obviously, they're getting monthly invoices, as the Commission pointed out, in addressing the refund issue. And so if they believe that these charges seem far too high for them, if they believe that apportionment is the right way to apply it, they could have brought an action either saying that it wasn't just and reasonable, saying that they need a declaratory action regarding how this is being interpreted or the action they brought here. But obviously, it wasn't on the Commission's burden to bring this case sooner. Because it's Seminole that's receiving these bills. And I should note, obviously, that the Commission then addressed this issue going forward as it accepted Florida Power & Light's change to apportionment. So the only issue really before the Commission is whether the Commission's going to find that Florida Power & Light was violating its tariff for language that the Commission found silent and ambiguous. Can I ask you about standard of review? So you said, and correctly, that normally we say that the agency's interpretation is reasonable. We'll uphold it. But I'm a little confused by what the agency said in this case. So at JA-226 in the order, the agency's conclusion is not that the agency concludes that the reason that the reading is reasonable. They appear to be giving an additional level of Chevron-like deference to FPL. They say, we conclude that FPL's reading of Schedule 4 is not unreasonable. So the normal thing is the agency says, this is our reading, and we say, well, okay, it's not unreasonable. We don't decide whether it's the best, but it's not unreasonable. But normally the agency gives its best reading. Is there some provision in the statute that says that FERC can uphold a utilities reading as long as it's not unreasonable? No, Your Honor. I think that this was somewhat implicit in the initial order, but it was clarified upon in re-hearing in paragraph 17, which is JA-300. The Commission found that the statute was ambiguous and that its reasonable reading was that it can support either apportionment or non-apportionment. And since utilities can choose to use either method within the three-tier structure laid out by Order 890, then it was therefore not unreasonable that Florida Power & Light had been defined non-apportionment for the period in question. So the best reading of the statute is that it allows apportionment or non-apportionment. That's what FERC says. The Commission didn't say whether it was necessarily the best reading. It just said its reasonable interpretation was that it was reasonable to allow either apportionment or non-apportionment. And if you look at paragraph 19, the Commission provides some reasons why it believes it was reasonable here, namely because there could be some regional variation. One of the goals of 890 is to create incentives for accurate scheduling. So some regions, non-apportionment is going to generally create higher charges. How about standardized charges? Your opponent says standardized charges addresses the apportionment, non-apportionment issue. What's your response to that? I think if you look at the language, nowhere in 890 does the Commission say we're creating a uniform system here. We're creating a system identical to Bonneville. It uses words like standardized or increased consistency. And the Commission did that here with, again, this three-tier structure and with certain principles that have to be met, namely escalating charges and incentives. But as the Commission noted, parties can always file individual variations on their tariff, and the Commission can accept it. That's why, for example, in the Louisville Gas and Electric case, the petitioner cites, the Commission accepted their clarification that we are in fact going to apportion because they thought that the tariff for a former tariff was not clear. And so they wanted to provide that clarity to their customers. And the Commission said there that it was consistent, but, again, consistent isn't this is the only way we can do it, or this is the only thing we're going to allow. So going forward, what's the best practice? Do you just have to do something that the party's got to talk about beforehand? A standardized agreement to nail it down? If there continues to be issues, the Commission, like a court, can adjudicate matters on a case-by-case basis. The Commission has now told parties you can use apportionment or non-apportionment if either transmission providers or their customers think that there's some confusion within their region or within their contracts as to which applies, they can come to the Commission, again, similar to bringing a Section 206 action or a declaratory action, seeking clarification. Or parties can obviously amend or change their... Do you know anything why the apportionment language from the Bonneville example didn't make it into 890? Do you know anything about that? I do not, Your Honor, and I think that's what the Commission was confronting here, which is one can speculate, perhaps it was conscious, perhaps it was unintentional. It's hard to know, and so the Commission, again, is working on a slate of true ambiguity as to why that wasn't included, and so it's trying to reach a reasonable interpretation. And that sort of question of why it wasn't included cuts against, ultimately, what Seminole needs to show, which is that this was clearly unambiguous and requiring apportionment. Let me... I'll turn to the refund issue quickly. As discussed, again, the Commission here is looking at a provision that it's trying to construe reasonably within the context. And as Judge Garland's questions indicated, sentence one of that provision says you have to challenge the correctness of any bill within 24 months. Section three has similar language, or sentence three of that provision has similar language. And so when the Commission's looking at this and then sentence four says accuracy or the correct rate, the Commission's trying to give meaning to each sentence and each provision and found it was a reasonable interpretation to find that the challenge to any bill has to be brought on the correctness within 24 months. In addition to that, the Commission also has a good bit of equitable discretion over the matter of refunds. And the Commission thought it was reasonable here, given that they believe these again, these charges were discernible from the monthly bills, which they were attached to someone's complaint, to be able to determine whether a greater refund period was appropriate. Obviously the Commission can order no refunds at all, and so it felt that nearly three years of refunds in addition to the fact that it was retrospectively changing the provision to allow apportionment going forward was a reasonable resolution. If there are no further questions, I'll see you the rest of my time. Good morning. May it please the Court, John Shepard for the Board of Power and Light. I think probably the best way to address this is to go through some of the questions that Governor's already asked. Judge Griffith, you've focused on this question of standardization. Clearly what FERC did not mean to say uniform would use the term uniform. It's important to understand that Order 890 did significantly advance the ball in terms of creating increased uniformity without compelling uniformity. That format over there has had to read every Schedule 4 filing that anyone's done, and you'd be surprised at the degree of  If you look at things like the Carl G. Neese case or Vista, people are coming in to adopt the very approach that Seminole says that it wants, and they are asking for permission to insert language that accomplishes the objective that they have, but it's not in Performance Schedule 4. It's just not there. Indeed, the greater than, lesser than dispute, which is the subject of the refund here, that language is not in the Performance Schedule 4 as drafted either. The only way that FERC was able to determine that there was a problem on that front was to point at 634, Order 890 and note that, ah, it had a parenthetical saying whichever is higher. Actually, there's three parentheticals each time it reached it. So FERC, I think it's fair to say, engaged in a searching inquiry to say, all right, what did Schedule 4 performance say? It wasn't really all that clear, so they looked at their orders, and in one case, ours, with respect to apportionment, they said, we didn't say anything about apportionment. With respect to the higher than, lesser than thing, they looked at that one paragraph and said, we did say higher up there, so that one, we're going to interpret as a tariff violation, which is why we've already paid them a refund. And it's important to underscore here that FPL has given Seminole the lion's share of what it wants. They filed a complaint, we voluntarily moved to change our tariff. They asked for refunds, we gave them refunds. So this is all about a locked-in period based on the tariff violation piece. Um, you're not suggesting that just because they got part of what they wanted they can't ask for all? No, of course they can. I just, my point, Your Honor, is that if we're thinking of this in equitable terms, I think that it's fair to say that FPL has bent over backwards to try and improve its relationship with Seminole and get these situations fixed. They note in their reply brief, for example, that as a result of this case, they've now adopted a dynamic scheduling system with some new equipment, and their imbalance charges have gone down by 50%, both in terms of their frequency and in terms of the size of those. So, I would argue that FERC actually achieved what it wanted to achieve through this process, which was to get people to regularize their purchases. Judge Garland, you asked a really interesting question about FERC's language. That's two compliments. First in this case, first in the case before. I take it mine wasn't that interesting then? No, no, it's just that what I mean to point out is that no one seems to have anticipated this in the briefing. So, this is new, and I haven't had an opportunity to discuss it before. And it's this. Are there situations where FERC defers to a utilities interpretation? Because it is awkwardly phrased, as you point out. The first time, in the first order. It's less awkwardly phrased in the re-hearing order. I think that the important thing for the Court to understand about why FERC would answer the question that way is that the complaint says, at 11, and FERC cites this and we cite this, the only issue in the case is whether or not FPL violated its tariff. And that statement carries a huge amount of weight along with it. Because it's not just a situation where you're going to have to do refunds. It's also a situation where if you commit a tariff violation, you're going to have to look at disgorgement, you're going to have to look at potential penalties. It is a very big deal when someone comes in and says you have violated your tariff. Huge deal. That's why I'm here, right now. That is the when someone comes in and says, FPL, you violated your tariff, I think it is a reasonable response to say, no, we think that FPL's interpretation was reasonable. Because that carries with it a whole lot of baggage about this idea of a tariff violation. That is a stigma that no utility wants to have in any way. Is a good faith violation less bad than a bad faith violation? I mean, do you have all the same... It depends. Even if these tariffs are hard to read and you did the best you could and that was a reasonable reading, isn't that still a violation? It is. Which is why, well, first penalty guidelines aren't provided right now. But they have different ones that apply strict scrutiny to and ones that are different. If the court wants guidance on this subject, let's look to Town of Concord. Similar decision on the subject of refunds. That's a situation where there was not a bad faith problem and the court said, look, they made an error. Was there a bad faith problem? That's something which I think is properly committed to FERC's discretion in deciding whether or not to order refunds here entirely for a locked-in period looking backwards. And I don't think that FERC has properly applied its discretion here. Judge Griffith, you were very concerned about this question of notice. You said, well, is this something we want to encourage where agencies are going to have an ambiguous provision and then they're going to all of a sudden say, surprise, this is what it really means. I just go back to this point. This is the first time since 2007 that someone came in and said, we're concerned about the way that you've interpreted this provision. I do think it's incumbent upon people who have a problem with a bill to raise that. If we were having a rent dispute, we would have no trouble trying to say that that's the way that people should view things. Is there an agency standard that's developed over the period of time? There is not. And these are the following reasons why. The first level of division is you've got the Schedule 4 inside of RTOs situation which is treated very differently than this kind of situation where the transmission provider is not an RTO. First, remove the half of the country that's in RTOs and get into the more vertically integrated piece. Then there is a wide variance in the way that companies deal with this. Public Service Company of Colorado just this past November filed to put in language first to apportion and then to unapportion in a very recent period. This is very rarely litigated. There's another important piece of this puzzle as to why it would have gone so long before a decision was made on this before anyone really ventilated it. And it's that in Order 890, in fact in the paragraphs immediately after the ones that this Court is most concerned with, FERC says, you know what? If you already have an existing contract for the way that you're dealing with imbalances, we're not going to require uniformity anywhere in the country so just leave your contract exactly as is. So all these things working together, if you already have a contract, you don't need to do this. If you're in an RTO, that's a whole different game. There are very few people that need to deal with this. But then we get to the question of invoices. And I just don't think that FERC is wrong in pointing at the invoice and saying, there's a column, an ultimate column on each of these bills and it says, here's the percentage. That's it. Here's the amount, here's the percentage. There's no doubt that they were being charged based only on this tier. And they've already gotten two years worth of refunds. So reaching back to more refunds and to get the time value of the refunds, that is an entirely disproportionate solution to a question of first impression. There was one more question, if you'll indulge me. The correct versus accurate piece. I think that the court's really fully looked at that. But two points about the interpretation. If you think we've already looked at it fully and you agree with the way we seem to be looking at it, then it's really safest to sit down. Thank you, Your Honor. I learned that myself as a trial lawyer. It was a big mistake. Okay. So FERC is correct that this issue was not directly addressed in Order 890. FERC did not say apportionment versus non-apportionment. And FPL is correct that this issue hasn't been looked at in a while. However, the Louisville gas and electric case was decided in 2007, and the issue there, in our view, was put directly before FERC. Assuming FERC is correct in that it just didn't occur to them before when they were putting together the rulemaking. It was directly put before them in that Louisville gas and electric case. And FERC said apportionment is consistent with Pro Forma Schedule 4. And it didn't say, oh, and by the way, apportionment would also be inconsistent. If that was non-apportionment, it would have also been inconsistent. That would have been its responsibility right then and there to have done if that's what if that were its intent. This idea that somehow the customer has to bring a declaratory action to, and this is the first we've heard of this in this case, to determine whether or not how a Pro Forma tariff language is supposed to be interpreted, I've never heard of that in any context when you have a new rulemaking setting forth a new language, and then all of a sudden the customer later has to come and seek an action to determine what it means. The issue of what it meant was put directly before FERC in the LG&E case. And yes, it's true that different utilities do things differently, but that's the point of going and filing revisions to your tariff. This idea that different utilities may have different needs, that's the language that was used in the hearing order that different transmission providers may have different needs and therefore we're going to let them interpret it how they please. We've never seen anything like that before and FERC hasn't pointed to anything like that. And again, whether you take the standardized charges language at face value to mean that charges have to be the same or not, there's also just the general proposition that you have standardized tariff language and it generally has to mean the same thing. You can't put the burden on customers to guess what it is or to file a declaratory action to determine what the utility is going to do. And finally, one thing I'd point out regarding the refund issue, that sentence, the sentence regarding bills rendered under and in accordance with, the way FERC interpreted that was to essentially say these are the only types of challenges you can mean, period. And that's an absurd interpretation as far as we're concerned that it's a blanket limitation on challenges to bills regardless of timing. And that's essentially what their interpretation was not as presented by the court here. So we don't have to accept that part of their interpretation in order to resolve this case, right? The only question in this case is the timing question. Yes. Well, it's the interpretation of Section 12 and their interpretation in our view is absurd. They still haven't told us what under and accordance with means and you've given your idea of what it could mean when you interpret it but that's not what FERC said in its words. I agree that my idea doesn't stand for anything at this point. I agree. So, you know, and the bottom line is the customer here was overcharged. Whether that was the intent or not, it was overcharged and it is required to have refunds going back to when the tariff violation began. FPL's brief repeatedly refers to retroactive refunds but there's nothing retroactive about these refunds whatsoever. These are refunds from the date the violation began, not before that. And so, and you don't have a situation here where you don't have a situation where similar to where FERC normally does limit refunds. The idea that just because we could have seen the violation earlier means we should be cut off from getting refunds is inconsistent with this Court's holding in the Louisiana Public Service Commission case where it said a delay in asserting a claim is not all that weighty of a factor and, quote-unquote, may be inadequate standing alone. Here, that is the only factor that's been cited is our delay in asserting the claim. And the rehearing order, amazingly, completely ignores our abuse of discretion argument. We raise several reasons why we believe FERC failed to appropriately balance the various factors that are relevant in determining whether refunds are appropriate, full refunds are appropriate, and it simply ignored it on rehearing, didn't say a word. And so we submit that the orders are clearly arbitrary and capricious and must be remanded. Further questions? All right, we'll take the matter under submission. Thank you very much.
judges: Garland, Griffith, Kavanaugh